NATIONWIDE MUTUAL INSURANCE COMPANY *v.*
WILLIAM JACKSON WEBB

[No. 513, September Term, 1979.]

\* \* \*

MARYLAND AUTOMOBILE INSURANCE FUND *v.*
ANTHONY J. FRANZ, Ind. and t/a Diamond Cab

[No. 545, September Term, 1979.]

*Decided January 11, 1980.*

The causes were argued before MORTON, THOMPSON and LOWE, JJ., in No. 513 and LOWE, MASON and LISS, JJ., in No. 545.

In No. 513, *John W. T. Webb,* with whom were *Ernest I. Cornbrooks, III* and *Webb, Burnett & Duvall* on the brief, for appellant.

In No. 513, *Thomas S. Simpkins* for appellee.

In No. 545, *Sidney G. Leech,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellant.

In No. 545, *Douglas W. Knight,* with whom were *Leonard, Phillips & Knight* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

We are reporting two cases in this opinion because of a common question of law decided diametrically at the trial level in different circuits. In each instance, however, an insurer is the appellant and the appellees are individuals who have recovered from their insurers under policies containing an uninsured motorist provision as required by Md. Code, Art. 48A, § 541 (c), which provides that

> "... every policy of motor vehicle liability insurance issued ... shall contain coverage ... *for damages which the insured is entitled to recover from the owner* or operator *of an uninsured motor vehicle* because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle." (Emphasis added).

At the root of both appeals is how the insured's entitlement to recover such damages from the uninsured motorist can be established sufficiently to compel contractual compliance by the insurer under its mandated endorsement. Until July 24, 1979, it had not been established whether an insured could sue his insurer directly under the uninsured motorist provision, or whether he must sue the tortfeasor directly, thus permitting the company to oppose contractual entitlement under the uninsured motorist provision by defending the liability of the tortfeasor. In *Reese v. State Farm Mut. Auto. Ins.,* 285 Md. 548 (1979), however, the Court of Appeals laid to rest that concern, pointing out that the former prohibitions against suing or impleading a tortfeasor's liability insurance carrier was predicated upon the absence of a direct contractual obligation. But that impediment does not preclude suit directly against an insured's own carrier under an uninsured motorist's provision. The Court of Appeals, following the majority view, held that:

> "He [the insured] has the option of bringing a contract action against his insurer or a tort action against the uninsured motorist." *Id.* at 554.

In each of the cases with which we deal here, the insured opted to bring a tort action against the uninsured motorist, and in each case obtained a judgment. In case No. 513, the trial judge, in the Circuit Court for Wicomico County, relied upon a judgment on the merits to enter a summary judgment on behalf of the insured. In case No. 545, the Superior Court of Baltimore City declined to enter summary judgment on the question of liability despite a default judgment against the uninsured, but decided the case in favor of the insured after hearing the facts. Before discussing the common question relating to the summary judgment motions, perhaps more detail would be helpful in each case.

In appeal No. 513, Nationwide Mutual Insurance Company (Nationwide) complains that the Circuit Court for Wicomico County granted appellee William Jackson Webb's Motion for Summary Judgment for $16,591.77 against it, predicated upon a judgment entered against an uninsured motorist by whom Webb had been injured as the result of an accident. Nationwide, with notice of the prior action, did not intervene as permitted of right by Md. Rule 208 a, which reads:

> "Upon timely application a person shall be permitted to intervene in an action: (a) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (b) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

Instead, Nationwide elected to rely upon two provisions of its policy which it contends permits it to readjudicate the underlying question of entitlement, *i.e.,* the uninsured's liability. The primary provision states that:

> "No judgment against any person ... shall be conclusive, as between the Insured [Webb] and the Company, of the issues of liability ... unless such

> judgment is entered pursuant to an action
> prosecuted by the Insured with the written consent
> of the Company."

Obviously, the insured had not obtained written consent of the Company to *prosecute* the suit against the uninsured tortfeasor. In fact, four days after that suit was entered, the Company declined liability.

The second provision that Nationwide relies upon as a condition precedent with which Webb has failed to comply is the specific type of notice that the Company requires when suit is *instituted* against an uninsured tortfeasor. The policy states:

> "If ... the Insured ... shall institute any legal action
> for bodily injury against any person ... a copy of the
> summons and complaint or other process ... shall be
> forwarded immediately to the Company ...."

Again the insured did not comply. Rather a letter containing notification of the pending suit including docket entries, etc., was sent four and one-half months after suit was instituted; however, no "summons and complaint or other process" was ever served upon or mailed to Nationwide. To underscore or emphasize these provisions the contract sets forth that:

> "No action shall lie against the Company unless, as
> a condition precedent thereto, the Insured or his
> legal representative has fully complied with all the
> terms of this endorsement."

In case No. 545, the Superior Court of Baltimore City denied a summary judgment motion predicated upon the prior default judgment entered against the tortfeasor. However, it ruled in the insured's favor after hearing the facts. The insurer, Maryland Automobile Insurance Fund (MAIF), has appealed complaining that under the trial judge's findings of fact he was compelled by law to find that appellee Anthony J. Franz (Franz), was contributorily negligent in the accident with the uninsured motorist. The common question in the two cases before us, however, is raised by cross-appeal in which

Franz contends that the Superior Court erred in denying him summary judgment on the liability issue. That denial was predicated upon a policy provision similar to the one in case No. 513 which required written consent by the insurer to prosecute a suit against an uninsured motorist before a default judgment in such case would bind the company.

> "No default judgment against any known person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, as to the establishment of legal liability or of the amount of damages to which the insured is legally entitled, unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the Company."

In this case, however, there is no notice question, as there is in 513, since MAIF conceded in its answer to motion for summary judgment that it

> "had notice of the suit instituted against the uninsured motorist . . . .",

and relied entirely on its having never given written consent to prosecute that suit.

### —res judicata—

As is apparent from the elliptical quote in § 541 (c) above, the language establishing the "critical coverage" to be in each policy issued in Maryland, guarantees payment 1) "for damages" which the insured is 2) "entitled to recover" from an uninsured motorist. *Reese, supra* at 555. That which constitutes *entitlement* is a question of fact dependent upon the liability of an uninsured motorist to the insured. Obviously if an uninsured motorist is not liable for an insured's damages, the insured would not be "entitled to recover" against him and, therefore, is not covered by the provision as against his insurer. This provides the insurer a coverage defense against its insured based on lack of

entitlement; but to avail itself of that defense it must assume the role of the uninsured motorist. Any coverage defense based upon a liability determination is necessarily a derivative one. To the extent of that defense, the insurer has an interest mutual with that of the uninsured motorist and becomes therefore a "privy" of the uninsured. From this it follows that if the issue of liability is determined as between the uninsured motorist and the insured, that determination is res judicata not only as to the uninsured motorist but, assuming notice of the action, also as to the insurer whose rights are derived through the insured.

> "The basic rule of res judicata is that facts or questions which were in issue in a previous action and were therein determined by a court which had jurisdiction of the parties and the subject matter are conclusively settled by a final judgment in the first case and may not again be litigated in a subsequent action between the same parties *or their privies* even though the subsequent suit takes a different form or is based on a different cause of action. *Sterling v. Local 438, etc.,* 207 Md. 132; *Snodgrass v. Stubbs,* 192 Md. 287; *De Maio v. Lumbermens Mutual,* 247 Md. 30." *Pat Perusse Realty v. Lingo,* 249 Md. 33, 35 (1968) (emphasis added).

This bar to relitigating the same issues was predicated upon a "[p]ublic policy against repetitive identical litigation", *id.* at 45, and has been reemphasized in *MPC, Inc. v. Kenny,* 279 Md. 29, 35 (1977), in a collateral estoppel sense.

> "The public policy against interminable litigation, of which we spoke in *Pat Perusse,* applies with equal vigor in cases of collateral estoppel."

The "public policy" bar even extends to cases concluded by default judgments wherein the issue could have been litigated. Although obviously not "litigated", issues determined by default judgment are nonetheless conclusive. See *Glens Falls Ins. v. Amer. Oil Co.,* 254 Md. 120 (1969).

In *Glens Falls,* American Oil obtained a default judgment in the Peoples Court against the Estate of Leonard J. Jordan.

554

The declaration stated a claim sounding in negligence. When the Estate did not pay the judgment, American made demand on Glens Falls, Jordan's insurer. When Glens Falls refused to pay, or defend the Estate and disclaimed liability, American brought an action against it. Significantly, Glens Falls defended on the grounds that the policy in question did not cover the alleged insured. It asserted a policy defense, as opposed to a personal defense, against him. Although the Court held that Glens Falls was not "estopped by the People's Court judgment to raise *its* defense of non-coverage by reason of an intentional, non-accidental act by the insured," *id.* at 136 (emphasis supplied), it concluded with this caveat:

> "However, by following this course of conduct, ... Glens Falls acts at its peril and if such [coverage] defense is found to be lacking, then for purposes of liability, it is bound by the judgment of the People's Court against its insured." *Id.* at 137.

That statement is consistent with a substantial line of cases in which the Court of Appeals has held that a default judgment is a final determination of the question of liability:

> "A reading of both *Berwyn Fuel Co.* [*Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475 (1968)] *supra,* and *Tasea Investment Corp.* [*v. Dale,* 222 Md. 474 (1960)], *supra,* leaves no doubt in the Court's mind but that a judgment by default is a final determination as to liability. See also *Abrams v. Gay Investment Co.,* 253 Md. 121, 251 A.2d 876, *Sheehi v. Saia,* 250 Md. 198, 242 A.2d 174 (1968)." *Himes v. Day,* 254 Md. 197, 206 (1969).

In *Millison v. Ades of Lexington,* 262 Md. 319 (1971), decided two years after *Himes,* the Court of Appeals reenforced its holding, stating that:

> "A judgment by default, while it may require extension by way of proof of damages, Rule 648, is still final in respect of the question of the liability of the party against whom it is obtained. *Himes v. Day,* 254 Md. 197, 206, 254 A.2d 181 (1969); *Smith v.*

*Dolan,* 170 Md. 654, 657, 185 A. 453 (1936); *Loney v. Bailey,* 43 Md. 10, 15 (1875); *Green v. Hamilton,* 16 Md. 317, 329 (1860); and 2 Poe, *Pleading and Practice* § 372 (5th ed. Tiffany 1925). 'Like every other judgment, it is conclusive of every fact necessary to uphold it. *Freeman on Judgments,* sec. 330 * * *.' *Heyward v. Sanner,* 86 Md. 19, 21, 37 A. 798 (1897). This Court cannot go behind the judgment by default to examine into and determine upon the validity of the cause of action upon which suit is instituted, *Stansbury v. Keady,* 29 Md. 361, 368 (1868), and any testimony offered to contradict liability is inadmissible, *Betz v. Welty,* 116 Md. 190, 195, 81 A. 382 (1911)." *Id.* at 328.

Assuming proper notice of the suits against the uninsured motorists to the insurers, it seems quite clear that — but for the written-consent-to-prosecute provisions of the policies — the questions of entitlement were concluded by the judgments. The insurance carriers could no longer raise any defenses that were available to the uninsured motorists, although the insurers were not precluded from raising defenses based upon their policies. See *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396 (1975); *Glens Falls Ins. v. Amer. Oil Co., supra.*

—the coverage mandated—

But the insurers contend that they are not liable under their policies. They argue that because the insureds prosecuted these cases against the tortfeasors without getting written consent from the insurers, they failed to comply with a condition precedent.

However, § 541 (c) not only mandates the uninsured motorist coverage, it also places a minimum standard on the amount of that coverage.

"In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A §§ 243H and 243-I."

The Court of Appeals, in *State Farm v. Md. Auto. Ins. Fund,* 277 Md. 602, 605 (1976), made it clear that any provision limiting the coverage to less than that legislatively mandated is void. The coverage afforded the insured — indeed "[t]he critical coverage language" *(Reese, supra)* is "for damages which the insured is entitled to recover..." from an uninsured motorist. The statute *does not say* "damages which the insured is entitled to recover *if* prosecution to recover is consented to by the insurer in writing." That contractual restriction forecloses one of the options available to the insured under the statute as interpreted by the Court of Appeals in *State Farm v. Md. Auto. Ins. Fund, i.e.,* to pursue the uninsured motorist directly establishing entitlement to recover against him. Since the coverage is only for that to which an insured is *entitled* against an uninsured motorist, to restrict a means of establishing entitlement, restricts the coverage itself thus clearly limiting the coverage which the Legislature insists that every Maryland insurer provide their insureds.

It is also well to note that there is neither statutory right nor requirement that the insurer defend the uninsured motorist, nor is such a defendant compelled to accept such a defender. The insurer's "right" is interpreted through the rule (208) providing a "right" as an intervenor. That right, by virtue of its origin, is a procedural right not a substantive one and is separate from the coverage provisions. It does not affect the breadth or scope of coverage as a permissible limitation on the statutory entitlement language. Proper and timely notice to the insurance carrier to avoid prejudice of its rights is all that is necessary. *Keel v. MFA Ins. Co.,* 553 P.2d 153, 157 (Okla. 1976). The insured's right to recover from the company those damages to which he is entitled from another cannot be proscribed or limited by restricting his right to establish such entitlement by either of the options open to him. See *Reese, supra.*

—notice—

In case No. 545, MAIF has conceded timely notice; therefore, we hold that the written consent provision was not

a bar to summary judgment on the entitlement question based upon the default judgment and should have been entered in the amount of the initial judgment, *i.e.,* $3,182.84. Since the trial judge found in Franz's favor and entered judgment in the amount of $3,000.00, the only harm done by the failure to enter summary judgment was in the amount of $182.84. We will, therefore, modify the judgment of the Superior Court of Baltimore City by adding thereto the sum of $182.84, making the amount of the judgment $3,182.84 and as modified, we will affirm.

In case No. 513, our holding dispenses with one argument of appellant, *i.e.,* that Webb failed to comply with the condition precedent for coverage of obtaining written consent. To the extent that failure to comply with the provision that the insured must provide the insurer with "a copy of the summons and complaint or other process" is intended to bar recovery under the uninsured motorist endorsement, we also find that it improperly restricts the coverage required.

For insurance carriers generally, § 541 (c) establishes that the minimum standard of coverage is to be the same as established for the Maryland Automobile Insurance Fund in §§ 243H and 243-I. Section 243H (b) then provides that with respect to the courts the Court of Appeals shall set forth the procedural requirements,

> "and as a condition precedent to any liability on the part of the Fund . . . a claimant shall comply with all such rules . . . ."

The Court of Appeals complied by enacting "Subtitle BW Maryland Automobile Insurance Fund" rules. In regard to service of process, it declared a procedure in RULE BW4 b (1) "COMMENCEMENT OF ACTION", not unlike the Nationwide provision, that is:

> "(1) In addition to serving process upon any uninsured motorist, a copy of the summons and declaration shall be mailed to the Executive Director or his designee within fifteen (15) days of the filing of the action."

Since the "Executive Director or his designee" is identifiable as the insurer for our comparative purposes, it is fair to say that the procedural standard established by Nationwide, requiring copies of the summons and complaint or other process, does not exceed that which was contemplated by the statute through the Court of Appeals' rule. However, the rule goes on to say that:

> "(2) Notwithstanding the provisions of section b (1) of this Rule, failure to give notice of suit shall not defeat the claim against the Fund so long as the Fund has reasonable notice of the pendency of the action and a reasonable opportunity to defend." [1]

We, therefore, hold that the failure to comply with contractual procedural "conditions precedent" to coverage that the insured provide the summons and complaint or other process is not a bar to recovery of the damages to which the insured is entitled against the insured motorist; however, the insurer must have had reasonable notice of the pendency of the action against the uninsured motorist and a reasonable opportunity to protect its interest by intervention pursuant to Md. Rule 208.

Notice in case No. 513 was not provided the insurer until four and one-half months after suit had been instituted against the uninsured motorist, although that was still four months before judgment was entered. There has been no allegation by the insurer that noncompliance with the condition and the delayed notification prejudiced Nationwide from having a reasonable opportunity to protect its interest by intervention. *Cf. Keel, supra.* The company argued only that strict compliance was a condition precedent of the policy.

We will, however, remand case No. 513 pursuant to Md. Rule 1071 to provide the insurer an opportunity to move to set aside the summary judgment if it can by affidavit or evidence convince the court that a question of fact regarding

---

1. To the extent that this procedural rule conflicts with the statutory definition of such rules as "condition precedent", the conflict must be resolved in favor of the rule by virtue of its subsequent superseding of the statute on a procedural issue. Md. Const. Art. 4 § 18; Meloy v. Squires, 42 Md. 378 (1875). And see Gabelein v. Plaenker, 36 Md. 61 (1872).

such prejudice exists. If the court determines that the insurer has no defense predicated upon prejudice due to Webb's belated notice, the summary judgment will stand. On the other hand, if the court finds evidence sufficient to constitute a disputed fact that the insurer could be factually determined to have been prejudicially deprived of an opportunity to defend the liability issue through intervention, the summary judgment shall be vacated and that issue will be among those presented to a factfinder in a trial on the merits. If, at such trial, the factfinder determines that the insurer was not prejudiced by the delayed notice, the prior judgment shall, by res judicata, be conclusive evidence of entitlement; however, if the insurer is found to be prejudiced by having had no opportunity to intervene in the case against the tortfeasor due to the belated notification of the suit, the res judicata bar will be no longer available against the carrier, and the judgment no longer conclusive evidence of entitlement. The insured must then again prove both damages and liability against which the insurer may interpose any defenses which are or were available to the uninsured motorist.

> *No. 545, judgment of the Superior Court of Baltimore City modified herein and as modified affirmed.*
> *Costs to be paid by the appellant.*
> *No. 513, judgment neither reversed nor affirmed; case remanded to the Circuit Court for Wicomico County, pursuant to Md. Rule 1071, for factual determination in accordance with this opinion.*
> *Costs of the appeal to abide the result.*