Cheshire
No. 89-212

NATIONAL GRANGE MUTUAL INSURANCE COMPANY

v.

LYNDA NOEDING SMITH, ADMINISTRATRIX OF THE ESTATE OF LISA NOEDING

May 24, 1990

*Wiggin & Nourie*, of Manchester (*Gary M. Burt* on the brief and orally), for the plaintiff.

*Leahy, Denault & Moody*, of Claremont (*Thomas P. Connair* on the brief and orally), for the defendant.

SOUTER, J.   In these cross appeals from an order of the Superior Court (*Hollman*, J.) on cross petitions for declaratory judgment, an uninsured motorist carrier excepts to an award of interest from the date of the writ in an underlying tort action that had resulted in a verdict held to bind both insurer and insured, and the insured excepts to the ruling that it was so bound. We reverse as to interest but affirm that the underlying verdict bound the insured.

Following the death of Lisa Noeding by asphyxiation in an auto, her administratrix brought action against the car's operator and the owner of a garage that had serviced it. The decedent's uninsured motorist carrier, National Grange Mutual Insurance Company, refused written permission to proceed with the tort action, although it was aware of the litigation and raised no objection to it. The administratrix and National Grange also discussed the possible effect of the litigation on their contractual relationship as insured and insurer, but they reached no agreement on that, either. When the underlying tort action ended in a verdict against the operator exceeding his liability coverage, the administratrix and National Grange each filed a petition for declaratory judgment to determine their respective rights. The trial court ruled that each party was bound by the amount of the verdict in the underlying action, and held National Grange liable, *inter alia*, for interest on its obligation from the date of the underlying writ.

■ For the source of the tort judgment's preclusion of further litigation between the present parties over the extent of the car operator's liability to the decedent, we need look no further than the terms of National Grange's policy. The statement of its Coverage J provides, insofar as relevant, that "[n]o judgment against [an underlying tort defendant] . . . shall be conclusive, as between the insured and the company . . . unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company." This language reflects an underlying contractual assumption that as a general rule such a judgment will bind the parties upon satisfaction of the written consent condition, the clear object of which parallels the privity requirement of collateral estoppel, *see Daigle v. City of Portsmouth*, 129 N.H. 561, 571, 534 A.2d 689, 694 (1987), in shielding the insurer against the effect of any proceeding in which its interest was not protected. In the instant case, the trial court found that National Grange's behavior had waived the written consent requirement, a conclusion that National Grange does not appeal and the administratrix does not contest. Given the trial court's further finding that the administratrix had a full and fair opportunity to litigate the amount of the damages for which the tortfeasor was responsible, there is no apparent reason to refuse to give effect to the underlying assumption of the parties' insurance contract, that the judgment on the verdict setting the damages against the tortfeasor would bind them both as to the amount of those damages.

In turning now to National Grange's appeal from the award of prejudgment interest, we begin again with the policy terms, which provide that when a prior judgment is binding, its function is to determine what the Coverage J provisions describe as the amount that "the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury . . . including death . . . ." While the term "damages" is nowhere formally defined in the policy, a reading of Part I, providing liability coverage, discloses an express distinction between "damages" and "interest" on any judgment. Since a policy is to be read as a whole, *see Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 768–69, 423 A.2d 980, 983 (1980), and since there is no indication that "damages" might have a different meaning under Coverage J, it follows that the company's contractual obligation is limited by the amount necessary to compensate the insured for the uninsured motorist's infliction of bodily injury, to the exclusion of interest that might be claimed against the motorist with respect to any sum thus due. If any such interest is payable, then, the obligation must originate extraneously to the policy.

Two statutory sources have been cited. The administratrix invokes the terms of the statutory obligation upon liability insurers to provide uninsured motorist coverage, RSA 264:15, I (Supp. 1989), the object of which is to protect "persons . . . who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles . . . ." *Id.* She argues that "damages" can be understood to include loss of the use of compensating money, and should therefore be so understood in this statute, so as to create an obligation to pay interest on any compensating sum as from the date of the writ in any underlying action against the tortfeasor.

■ While there is more than one possible response to this position, its principal weakness appears as soon as we apply the rule that statutes *in pari materia* are to be construed together. *See Hayes v. Hanson*, 12 N.H. 284, 290 (1841). This leads us to examine RSA 524:1-b, which provides generally for the addition of interest to civil verdicts, and which expressly distinguishes "interest" as outside the scope of "pecuniary damages." In the absence of some textual basis for reading "damages" more expansively in RSA 264:15, I (Supp. 1989), coherence demands that the term as used in § 15, I, also be construed to mean the measure of the bodily injury to be compensated, to the exclusion of any interest.

As it turns out, just this assumption underlay this court's decision in *Hackman v. American Mutual Liability Insurance Co.*, 110 N.H. 87, 261 A.2d 433 (1970). *Hackman* assumed that the "damages" recoverable under the uninsured motorist provisions of the policy before the court were the measure of the bodily injury without regard to interest, *id.* at 94, 261 A.2d at 438, and the court thus construed that policy just as we have done in the instance before us now. In response to the question whether the insured was entitled to interest on the damages awarded and, if so, from what date, the court made no reference to the predecessor section of what is now RSA 264:15, I (Supp. 1989), which would have been the section to cite if its use of "damages" had been thought to include interest on any award for the covered injury. Instead, the court rested its answer on RSA 524:1-b, and held that interest was allowable only as from the date of an arbitrator's award settling the amount of damages recoverable under an uninsured motorist provision (when, as in the normal course, the insurer's uninsured motorist obligation is set by an arbitrator). *See id.* at 94–95, 261 A.2d 438. *Hackman*'s underlying assumption about the inapplicability of RSA 264:15, I (Supp. 1989) has survived one recodification of the statute, Laws 1981, ch. 146, and two revisions of it, Laws 1981, 507:3 and 507:7, in none of which did the legislature tamper with the reference to "damages" so as to include an interest component. The meaning of the term should therefore be taken as settled, contrary to the administratrix's position.

That leaves her entitlement to interest dependent on RSA 524:1-b. As to this, National Grange concedes that the verdict in the underlying action, binding as it is on both parties to this proceeding, may be taken as equivalent to the arbitrator's award that would otherwise have set the amount payable under the uninsured motorist coverage. This, then, in accordance with *Hackman*, is a "verdict or finding" within the meaning of section 1-b, and from its date, the statutory interest is to be computed. *See Hackman, supra* at 94–95, 261 A.2d at 438. The case will be remanded for an appropriate recomputation.

The administratrix also seeks a mandate for the entry of costs and attorney's fees under RSA 491:22-b. Whatever may be the merits of her claim to be so entitled, however, there is no indication in the record that she raised it in the trial court, either before verdict or after it, and it must be treated as impermissibly raised in the first

instance here. *See In re Estate of Herbert*, 130 N.H. 548, 551, 543 A.2d 422, 424 (1988).

*Affirmed in part; reversed in part; remanded.*

All concurred.