[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #122
The plaintiff, Albert F. Harnicar, Administrator of the Estate of Thomas Albert Harnicar, instituted this action against the defendant, Nationwide Mutual Insurance Company, to recover uninsured motorist benefits allegedly due under an automobile liability insurance policy. The plaintiff's decedent died as the result of being struck by a motor vehicle driven by an uninsured motorist. In a separate wrongful death action against the uninsured motorist, the plaintiff received a judgment of $1.5 million dollars, which remains unsatisfied. Despite this judgment, the defendant continues to deny coverage under the uninsured motorist provisions of the plaintiff's policy. In a two count CT Page 7162 revised complaint, the plaintiff alleges claims for breach of contract and breach of an implied covenant of good faith and fair dealing. The plaintiff now moves for summary judgment on the first count alleging breach of contract.
The following facts are taken from the pleadings, affidavits and other documentation submitted with this motion. The plaintiff is the duly appointed administrator of the estate his son, Thomas Albert Harnicar, who died intestate on November 1, 1992, at the age of twenty-two. The plaintiff's decedent died as the result of injuries he sustained when, while crossing a street in New Britain, Connecticut, he was struck by a motor vehicle operated by Matthew D. Emirzian. At the time of the accident, Emirzian did not have motor vehicle liability insurance in violation of General Statutes Sec. 38a-371d. In connection with this accident, Emirzian pleaded guilty to charges of negligent homicide with a motor vehicle in violation of General Statutes Sec. 14-222a; evasion of responsibility in operation of a motor vehicle in violation of Gen. Stat. Sec. 14-224(a); failure to exercise due care to avoid a pedestrian in violation of Gen. Stat. Sec. 14-300d; and failure to maintain motor vehicle insurance in violation of Gen. Stat. Sec. 38a-371d. In September 1993, the plaintiff commenced a wrongful death action against Emirzian in Litchfield Superior Court. After Emirzian was defaulted, the court (Pickett, J.) entered final judgment in favor of the plaintiff and found economic damages in the amount of $508,801.65 and noneconomic damages in the amount of $1,000,000.
At the time of the his son's death, the plaintiff was insured under a contract of automobile insurance with the defendant. The plaintiff has remained current on all payments under the policy. The plaintiff's son was insured under the policy as both an assigned vehicle driver and as child residing in the plaintiff's household. Under the policy the defendant promised to pay compensatory damages due by law to an insured from the owner of an uninsured motor vehicle because of bodily injury resulting from the maintenance or use of such uninsured vehicle. The policy limit of these benefits is $300,000. The plaintiff timely filed with the defendant a sworn proof of loss and an application for benefits. While the defendant has paid the maximum amount of no-fault benefits under the policy, $5,000, it has denied payment of any uninsured motorist benefits under the policy. The first count of the revised complaint alleges a breach of contract. The second count, which is not the subject of this motion, alleges a breach of an implied covenant of good faith and fair dealing. CT Page 7163
The defendant filed an answer and special defenses. The first special defense alleges that any injuries sustained by the plaintiff's decedent were caused by his own negligence and carelessness. The second special defense alleges that if the plaintiff is entitled to recovery, his recovery is limited to his policy limit of $300,000. The third special defense alleges that if the plaintiff is entitled to recover from the defendant, the defendant is entitled to certain set-offs for payments made to the plaintiff. The plaintiff's reply to the special defenses denies the allegations of the first and second special defenses and admits in part the third special defense.
The plaintiff has filed a motion for summary judgment on the first count of the revised complaint. In support of this motion, the plaintiff filed memoranda of law, affidavits and supporting documentation. The defendant filed a memorandum in opposition and apparently relies on documentation submitted by the plaintiff.[1]
"Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial." Orenstein v.Old Buckingham Corp., 205 Conn. 572, 574, 534 A.2d 1172 (1987). "Practice Book Sec. 384 provides that `summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Water Way Properties v. Colt's Mfg. Co., 230 Conn. 660,664 (1994). "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact."Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105, 639 A.2d 507
(1994). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Water Way Properties v. Colt's Mfg. Co.,
supra, 664. "The test is whether a party would be entitled to a directed verdict on the same facts." Haesche v. Kissner, 229 Conn. 213,217 (1994).
The plaintiff contends that the court should grant summary judgment on the first count because he is legally entitled to recover damages from the uninsured motorist under both Connecticut CT Page 7164 Uninsured Motorist Law and the terms of the plaintiff's insurance policy. The plaintiff claims that the unsatisfied judgment against the uninsured tortfeasor obligates the defendant to pay uninsured motorist benefits. The plaintiff also argues that the defendant is collaterally estopped from relitigating the issue of the decedent's negligence. The plaintiff argues that this issue was already decided in the wrongful death action.
The defendant claims that there are issues of fact precluding summary judgment. The defendant argues that collateral estoppel does not apply in this matter because it was not a party to the prior wrongful death action and therefore any issues decided in that case have no bearing on this case. Additionally, the defendant contends that the issue of the decedent's contributory negligence was never raised in the wrongful death action, so that it cannot have any estoppel effect. Furthermore, the defendant argues that the defendant is not entitled to summary judgment under the statutory and policy provisions because the public policy of the uninsured motorist statute limits the amount of recovery to the amount of the uninsured's policy.
"The purpose of uninsured motorist coverage is to provide a personal injury claimant access to insurance protection to compensate for damages that would have been recoverable if the uninsured motorist had maintained an adequate policy of liability insurance." (Citations omitted.) Williams v. State Farm MutualAutomobile Ins. Co., 229 Conn. 359, 366 (1994). This insurance does not give an injured party a right of recovery beyond what would have been available had the tortfeasor maintained sufficient insurance. Id., 366-67. The insurance policy is to be interpreted by the same rules that govern the construction of any written contract and enforced in accordance with the intent of the parties as expressed in the language employed in the policy.Stephan v. Pennsylvania General Ins. Co., 224 Conn. 758, 763,621 A.2d 258 (1993). In addition, the policy must be read to include provisions that the law requires to be included and to exclude provisions that the law prohibits. Harlach v. MetropolitanProperty Liability Ins. Co., 221 Conn. 185, 191, 602 A.2d 1007
(1992).
General Statutes Sec. 38a-336(a) provides that "[e]ach automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334. . . for the protection of persons insured thereunder who are CT Page 7165 legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, including death resulting therefrom." General Statutes Sec. 38a-336(a). Additionally, the regulations adopted pursuant to this section provide that "the insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle." Conn. Dept. Reg. Sec. 38a-334-6. The plaintiff's policy of insurance is substantially similar to the language of the statute and regulations. The uninsured motorist endorsement to the policy provides that the insurer "will pay compensatory bodily damages suffered by you or a relative and due by law from the owner or driver of an uninsured motor vehicle." The plaintiff claims that there is no genuine issue of material fact that he is legally entitled to recover damages from the uninsured motorist.
The Connecticut Supreme Court has interpreted the phrase "legally entitled to collect damages from the owner or driver of an uninsured motor vehicle" to mean "that in order to recover under the policy, the plaintiff must prove: (1) that the other motorist was uninsured; (2) that the other motorist was legally liable under the prevailing law; and (3) the amount of liability. Whether the uninsured motorist was legally liable must be determined in light of any substantive defenses that would have been available to the uninsured motorist." (Citations and footnotes omitted.) Williamsv. State Farm Mutual Automobile Ins. Co., supra, 229 Conn. 367-68, (1994).
The parties do not dispute that the tortfeasor, Emirzian, was an uninsured motorist. The parties, however, dispute whether the uninsured motorist is legally liable for the decedent's injuries under the prevailing law. In support of his contention that the uninsured motorist is legally liable, the plaintiff has submitted affidavits and other supporting documentation that show not only that the uninsured motorist pleaded guilty to a number of offenses relating to the accident, including negligent homicide, evasion of responsibility and driving without insurance, but also that judgment was entered in favor of the plaintiff in the amount of $1.5 million against the uninsured motorist in a wrongful death action. Furthermore, the plaintiff has submitted the affidavit of the uninsured motorist, stating the circumstances of the accident, including the admission that he had been drinking on the night of the accident and that he was driving at a speed in excess of fifty CT Page 7166 miles per hour at the time of the collision.
The defendant contends that the decedent's negligence was the cause of his injuries. In order to prove that the uninsured motorist is not legally liable to the plaintiff on the basis on the decedent's own negligence, under Connecticut's comparative negligence statute the defendant would have to show that the decedent was more negligent than the uninsured motorist. General Statutes Sec. 52-572h(b). The defendant, however, has not submitted any evidence or documentation in opposition to this motion that shows in anyway that the decedent's own negligence was the cause of his injuries. Instead, the defendant relies on mere assertions that the decedent was contributorily negligent. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Water WayProperties v. Colt's Mfg. Co., supra, 230 Conn. 665. The defendant also has not submitted any evidence to refute the amount of damages awarded by the court in the wrongful death action.
Additionally, Emirzian's guilty pleas to the statutory violations are admissions that tend to prove his negligence.Jacobs v. Goodspeed, 180 Conn. 415, 418, 429 A.2d 915 (1980). While such admissions are not conclusive; Id., 419; the defendant on a summary judgment motion must at least provide some evidence to refute these admissions and that the decedent's negligence was the cause of his injuries and damages. Water Way Properties v.Colt's Mfg. Co., supra, 230 Conn. 665. In the face of the substantial evidence presented by the plaintiff in support of his motion, the defendant has not presented any evidence on this motion beyond its mere assertions of the decedent's negligence.
The defendant's memorandum does not fully address the question of whether the plaintiff is legally entitled to recover damages from the uninsured motorist under the policy and statutes and regulations, but instead relies on the policy limitation of $300,000. The defendant's memorandum focuses on the issue of whether the prior judgment in the wrongful death action collaterally estops the defendant from litigating the issue of the decedent's comparative negligence.
Collateral estoppel, or "issue preclusion" is the doctrine that bars relitigation, in a second cause of action between the same parties or those in privity with a party, of issues already CT Page 7167 determined in the first action. Rawling v. New Haven, 206 Conn. 100,110, 537 A.2d 439 (1988); Aetna Casualty Surety Co. v.Jones, 220 Conn. 285, 296, 596 A.2d 414 (1988). The related doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful litigation. Gionfriddo v. GartenhausCafe, 15 Conn. App. 392, 401, 546 A.2d 284 (1988), aff'd on other grounds, 211 Conn. 67, 71, 557 A.2d 540 (1989). "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." Aetna Casualty Surety Co. v. Jones, supra, 220 Conn. 296. The issues that a party seeks to relitigate in the new proceeding must also be identical to those considered in the prior proceeding. Crochiere v. Board of Education, 227 Conn. 333, 345,630 A.2d 1027 (1993). "To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding." (Citations omitted.) Carnese v. Middleton, 27 Conn. App. 530,542, 608 A.2d 700 (1992).
The Connecticut Supreme Court has abandoned the doctrine of mutuality of parties which held that a party may not use a prior judgment as an estoppel against the other party unless both parties were bound by the judgment. Aetna Casualty Surety Co. v. Jones,
supra, 220 Conn. 302. Thus, collateral estoppel maybe invoked not only against a party to a prior adverse proceeding, but also against those in privity with that party. Id., 303. While privity is often difficult to define,
 the concept exists `to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding.' A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity.
(Citations omitted.) Id., 304.
The Connecticut courts have not resolved the issue of whether a prior judgment rendered by default can have a collateral estoppel effect in a subsequent action. Hansted v. Safeco Ins. Co. ofCT Page 7168America, 19 Conn. App. 515, 518, 562 A.2d 1148 (1989); see Slatteryv. Maykut, 176 Conn. 147, 159 n. 8, 405 A.2d 76 (1978). The Appellate Court's decision in Ellis, however, suggested that if faced with this precise issue, the court would hold that a default judgment would have collateral estoppel effect in a future suit.Hansted v. Safeco Ins. Co. of America, 518-19 n. 2.
In this case, the defendant is in privity with the uninsured motorist because both parties share the same legal interests in the wrongful death action. The defendant and the tortfeasor shared identical interests because that action determined whether the plaintiff was legally entitled to recover damages from the uninsured motorist. This issue is central to whether the plaintiff may recover uninsured motorist benefits from the defendant. Additionally, the defendant had ample opportunity and notice to raise these issues and present a defense in the wrongful death suit. Opportunity is a factor to consider when determining privity. Aetna Casualty Surety Co. v. Jones, supra, 220 Conn. 306
n. 21. The issues decided in the wrongful death action are identical to two of the issues presently before the court: (1) whether the uninsured motorist is legally liable under the prevailing law; and (2) the amount of liability. These issues were both necessary to the court's judgment in the wrongful death action. While the issue of the tortfeasor's liability was decided as the result of a default, this court believes that such a judgment should have collateral estoppel effect in this suit. Furthermore, the issue of the amount of liability was fully litigated before the court in the wrongful death action. The defendant, therefore, is collaterally estopped from raising liability and damages issues, since they were previously decided in a final, valid and enforceable judgment to which the defendant was in privity with a party.
Furthermore, case law from other jurisdictions supports the conclusion that a judgment entered against an uninsured motorist, even when based on a default, is binding on the uninsured motorist insurer. See Champion Insurance Co. v. Denney, 555 So.2d 137 (Ala. 1989).; Sparks v. Nationwide Mutual Insurance Company,392 S.E.2d 415 (N.C.App. 1990); Nationwide Mutual Insurance Co. v. Webb,409 A.2d 1127 (Md.App. 1980); Dominici v. State Farm MutualAutomobile Insurance Co., 390 P.2d 806 (Mont. 1964); State FarmMutual Automobile Insurance Co. v. Christensen, 494 P.2d 552 (Nev. 1972). "A judgment rendered against the uninsured motorist may be conclusive against the uninsured motorist insurer, particularly where it has been joined as a party, or has notice of the CT Page 7169 proceedings, or a right to defend, or intervene, which has elected not to do." (Footnotes omitted.) 8C Appleman, Insurance Law andPractice, Sec. 5089.75, p. 372-73. Additionally, "[w]here an insured has filed an action against an uninsured motorist with the written consent of the insurer, a judgment obtained against the motorist is conclusive as against the insurer." 7 Am.Jur.2d "Automobile Insurance" Sec. 332, p. 1038.
In a case similar to that presently before the court, the Alabama Supreme Court held that a default judgment obtained by an insured against an uninsured tortfeasor was conclusive as to both liability and damages even when there was no consent to sue the uninsured motorist. Champion Insurance Company v. Denney, supra,555 So.2d 137 (Ala. 1989). In Denney, the court addressed the issue of whether the failure to comply with a consent to sue policy provision would prevent a default judgment against an uninsured motorist from having binding effect as to liability and damages in a subsequent suit against the insurer. Id., 139-40. The court held that an insurer would not be bound by such a judgment unless it had a full notice and adequate opportunity to intervene and present defenses and arguments necessary to protect its position. Id., 140. Since the insurer had such notice and opportunity, the court upheld the trial court's granting of summary judgment in favor of the insured for the amount of the policy limit. Id.
In this case, there is no issue as to whether the insured had consent to sue the uninsured motorist. The policy specifically provides that the insured can maintain an action against the liable party providing it timely supplies to the insurer copies of papers served. The policy originally provided that any judgment rendered against the insured would be binding only if it was obtained with the insurer's consent, but the applicable endorsement deleted this language. The plaintiff complied with the policy by supplying the defendant with a copy of the summons and complaint in the wrongful death action, and the defendant does not contend that these were not sent in a timely manner. The defendant, therefore, had notice of the plaintiff's suit against the tortfeasor and adequate opportunity to intervene and present defenses to protect its position. Despite this opportunity, the defendant, chose not to protect its interests. The defendant, thus, is bound by the judgment as to the issues of liability and damages.
There is no genuine issue of material fact that the plaintiff is "legally entitled" to collect damages from the uninsured motorist and that the amount of liability is $1.5 million. CT Page 7170 Therefore, the court grants summary judgment on the first count of the revised complaint in favor of the plaintiff in the amount of $300,000, the policy limit, minus $5,000, for reparation payments already paid by the defendant, for a total of $295,000.
PICKETT, J.