[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter came before the court for jury selection on a hearing in damages. The plaintiff then filed a. motion for judgment which the defendant opposed, putting at issue whether a judgment obtained by the plaintiff against an underinsured motorist is binding on the insurer as to the amount of damages that the plaintiff is entitled to recover pursuant to the underinsured motorist coverage provisions of the plaintiff's liability policy, notwithstanding the plaintiff's failure to obtain the insurer's written consent to sue as required by the CT Page 739 policy.
This claim arises out of an automobile accident that occurred on July 15, 1991 when the plaintiff, while stopped at a red light, was struck from behind by a motor vehicle which was owned and being operated by Bei-Rong Ye. As a result of that collision, the plaintiff sustained personal injuries and losses and, on April 8, 1992, brought an action for damages in this court. Bei-Rong Ye had liability coverage with Patriot General Insurance Company in the full amount of $20,000 on the date of the accident.
On April 5, 1993, the plaintiff's motion for summary judgment as to liability only against Bei-Rong Ye was granted. On May 3, 1993, the court granted plaintiff's motion to cite in his carrier, Allstate Insurance Company, as a party defendant in plaintiff's action against Ye for purposes of determining Allstate's liability pursuant to the underinsured provisions of the coverage which Allstate provided the plaintiff.[1] At a hearing in damages held on June 30, 1993, judgment was entered in favor of the plaintiff and against Ye in the sum of $68,867.00. That judgment was satisfied within the limits of Ye's coverage.[2]
On June 4, 1993, the plaintiff filed the complaint in this action after having made service on the defendant on May 27, 1993, some thirty-four days prior to the hearing in damages in the action against Ye. Allstate filed its appearance in this action on July 29, 1993 and subsequently filed a special defense alleging that the plaintiff's recovery is limited to the $100,000 policy limit for uninsured/underinsured motorist claims.
There is no dispute between the parties that, at the time of his accident involving the Ye vehicle, the plaintiff owned a vehicle which the defendant insured and the coverage included uninsured/underinsured motorist provisions. Nor is there any dispute that Ye had a maximum liability coverage of $20,000 at the time and that the plaintiff exhausted the full amount of that coverage. Summary judgment as to liability only was granted in favor of the plaintiff on April 11, 1994 and the matter was claimed for a jury trial on the hearing in damages. The defendant admits that it is obligated under the policy to pay the plaintiff damages for bodily injury that he would be legally entitled to receive from the owner or driver of the underinsured motor vehicle. CT Page 740
The purpose of requiring underinsured motorist coverage is "to give a personal injury claimant access to insurance protection to compensate for the damages that would have been recoverable if the underinsured motorist had maintained an adequate policy of liability insurance." Smith v. Safeco Ins. Co.of America, 225 Conn. 566, 573 (1993). "[S]tatutory provisions relating expressly to uninsured motorist coverage apply also to underinsured motorists." (Internal quotation marks omitted.)Rydingsword v. Liberty Mutual Ins. Co., 224 Conn. 8, 14 n. 11 (1992). Section 38a-336, General statutes, and its corresponding regulation, § 38-334-6, Regulations of Connecticut state Agencies, ". . . . not only require automobile liability insurers to provide underinsured motorist insurance, but also limit the ground upon which such insurance may be excluded or limited." (Footnote omitted.) Smith v. Safeco Ins. Co. of America, supra,
571-72.
The court noted that "[b]ecause underinsured motorist protection is not intended to provide a greater recovery than would have been available from the tortfeasor. . .the statutory reduction mandated by § 52-225a operates as a limitation on the amount of damages that a claimant may recover through underinsured motorist insurance. Indeed, . . .the underinsured motorist insurer is entitled to a credit for collateral source payments received by the claimant insofar as such payments reduce the amount that the claimant is legally entitled to recover from the tortfeasor." Id..
The pertinent part of § 38a-336, General statutes, requires that: "Each automobile liability insurance policy shall
provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334. . .for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured. . .and underinsured motor vehicle. . .because of bodily injury, including death resulting therefrom." (Emphasis added). Section 38a-336 (b), General statutes, states: "an insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements. . . ." CT Page 741
Finally, § 38a-334-6 (a) of the Regulations of Connecticut state Agencies provides, in pertinent part: "The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle." (Emphasis added.). "`Legally entitled to collect damages from the owner or driver of an uninsured motor vehicle, ' means that in order to recover under the policy, the plaintiff must prove: (1) that the other motorist was uninsured; (2) that the other motorist was legally liable under the prevailing law; and (3) the amount of liability." (Footnote omitted.) Williams v. State Farm MutualAutomobile Ins. Co., 229 Conn. 359, 367-68 (1994).
The Connecticut Supreme Court further noted that "it is undisputed that this phrase [`uninsured motorist'] also includes, as in this case, an underinsured motorist. . . . Thus, in this context, the plaintiff must prove that his damages exceed the amount of liability coverage of the tortfeasor." Id., 368 n. 9.
In moving for judgment prior to trial, the plaintiff has raised the issue of whether, under the circumstances of this case, the defendant legally is bound by the judgment rendered in favor of the plaintiff in Mazziotti v. Ye, Superior Court, Judicial District of New Haven, Docket No. 92 033 08 55. Were the court to grant the motion, it would have to find that the judgment entered against the underinsured motorist is conclusive as to liability and damages in the plaintiff's present action.
The liability policy issued to the plaintiff states, in part, that: "We will pay damages for bodily injury, sickness, disease or death which an insured person is legally entitled to recover from the owner or operator of an uninsured auto."[3] The plaintiff contends that the amount which he is legally entitled to recover under the policy has been determined by the judgment entered in the Ye matter. Accordingly, he seeks to have the court enter judgment in his favor in the sum of $68,867.00, less any deductions required by law.
The defendant argues that the doctrine of collateral estoppel cannot apply in this case because of lack of privity between Allstate and Bei-Rong Ye and, further, the judgment entered against Ye cannot bind the company because the plaintiff failed to obtain a written consent to sue Ye as required under the CT Page 742 policy.
In Rawling v. New Haven, 206 Conn. 100, 110 (1988), the court held that "Collateral estoppel, or issue preclusion, is the doctrine that bars relitigation, in a second cause of action between the same parties [or those in privity with a party] brought upon a different claim, of issues already determined in the first action."
"The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." Gionfriddov. Gartenhaus Cafe, 15 Conn. App. 392, 401 (1988), aff'd on other grounds, 211 Conn. 67, 71 (1989). "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) Aetna Casualty Surety Co. v. Jones,220 Conn. 285, 296 (1991). Moreover, the party who invokes the doctrine of collateral estoppel must show that "the issues sought to be litigated in the new proceeding [are] identical to those considered in the prior proceeding. " Crochiere v. Board ofEducation, 227 Conn. 333, 345 (1993).
"Collateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party." Aetna Casualty Surety Co. v. Jones, supra, 220 Conn. 303. The privity requirement ensures "that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding." (Internal quotation marks omitted.) Id., 304.
In the present matter, the defendant is in privity with the underinsured motorist in the prior action because both parties share the same legal interest. At issue in the underlying tort action against Ye was whether the plaintiff is legally entitled to recover damages from Ye and the amount of such damages; both claims being central to the issue of whether the plaintiff can recover underinsured motorist benefits from Allstate. Those issues were litigated and decided in favor of the plaintiff, a decision necessary to the judgment entered for the plaintiff.
To the extent that Allstate and the underinsured motorist share the same interest on the issues of liability and damages, CT Page 743 "the insurer has an interest mutual with that of the uninsured motorist and becomes therefore a `privy' of the uninsured."Nationwide Mutual Insurance Co. v. Webb, 44 Md. App. 547,409 A.2d 1127, 1129 (1980), aff'd in part and vacated in part,291 Md. 721, 436 A.2d 465 (1981).
Although the issue here appears not to have been addressed by our appellate courts, a similar issue arose in Harnicar v.Nationwide Mutual Ins., Superior Court, Judicial District of Litchfield at Litchfield, Docket No. 063893 (14 Conn. L. Rptr. 543
(June 7, 1995) (Pickett, J.)). There the court held that a default judgment entered against an uninsured tortfeasor is binding on the insurer in an action under the uninsured motorist coverage. The court further held that the insurer is collaterally estopped from raising as defenses the issues of liability and damages "since they were previously decided in a final, valid and enforceable judgment to which the defendant was in privity with a party. " Id., 546.
The court, in Harnicar, granted the plaintiff's motion for summary judgment, holding that where the defendant insurer had notice of the plaintiff's suit against the tortfeasor and an adequate opportunity to intervene and present defenses to protect its position, but chose not to, the defendant was bound by the judgment as to the issues of liability and damages. Id., 547. Courts in other jurisdictions also have concluded that, where the insurer has notice, a judgment entered against an underinsured motorist is binding on the plaintiff's insurer in a subsequent action to recover underinsured motorist benefits. See, e.g.,National Grange Mut. Ins. Co. v. Smith, 133 N.H. 279,574 A.2d 1386 (N.H. 1990) (insurer waived written consent requirement and was bound by judgment against tortfeasor where insurer refused to give written permission, although it was aware of the litigation and raised no objection to it).
In Champion Ins. Co. v. Denney, 555 So.2d 137, 139-40 (Ala. 1989), it was held that once the insurer is placed on notice of the tort action and given the opportunity to intervene, it will be bound by a valid and enforceable judgment obtained by the insured in a tort action against the uninsured motorist, despite the plaintiff's failure to comply with a consent to sue provision. See, also, Nationwide Mut. Ins. Co. v. Webb,291 Md. 721, 436 A.2d 465 (1981) ("consent to sue" clause void and insurer, having had notice and an opportunity to intervene, was bound by judgment in action against uninsured motorist.). CT Page 744
The question remaining before the court is whether Allstate had sufficient notice of the prior tort action against Ye to provide the insurer with an opportunity to intervene and protect its own interests. "It is settled law that considerations of due process require notice in order for an insurer to be bound by the outcome of the tort action. " Aetna Cas. Surety Co. v. Souras,78 Md. App. 71, 552 A.2d 908, 911 (1989), citing Nationwide Mut.Ins. Co. v. Webb, supra, 436 A.2d 481 n. 12. Also see Long v.General Accident Fire Life Assurance Corp., 29 Conn. Sup. 322,324 (Super. ct. 1971) ("the [insurance] company would not be bound by any judicial determination of the value of the plaintiff's claim in which it did not join").
As noted earlier, the plaintiff had service made upon Allstate on May 27, 1993, thirty-four days prior to the hearing in damages and judgment against Bei-Rong Ye. The complaint dutifully apprised Allstate of the relevant facts and allegations made in the plaintiff's action against Ye. Moreover, prior to the filing of either of the plaintiff's actions, Allstate had paid $4,492.71 (of a $5,000.00 maximum) to the plaintiff for medical expenses pursuant to the Basic Reparations Benefits provisions of the plaintiff's insurance policy and thus was on notice as to the extent and serious nature of the plaintiff's injuries. Aetna Cas. Sur. Co. v. Souras, supra, at 552 A.2d 911.
"[T]he combination of these factors clearly indicated that [Allstate's] coverage under the [underinsured motorist provisions of the] policy was at stake, and alerted [Allstate] to the need to protect its interest." Id. The court finds the defendant had adequate constructive notice, because of its payment of basic reparation benefits in the sum of $4,492.71, as well as adequate notice made by service of process on May 27, 1993 to satisfy due process requirements. The June 22, 1993 return date in this action required the defendant to enter an appearance by June 24, 1993 to avoid the risk of a judgment being entered by default. The defendant also chose to ignore that requirement and, as previously noted, did not enter its appearance until July 29, 1993.
The defendant is bound by the judgment in the underlying tort action as to the issues of liability and damages. It is noteworthy that the defendant makes no claim that it had no notice of the underlying tort action, but argues instead that the plaintiff failed to obtain Allstate's written consent to CT Page 745 prosecute the action against Ye as required under the policy. Nor is there any claim of prejudice to Allstate from the plaintiff's failure to comply with the written "consent to sue" clause and the delayed notification of the tort action against Ye.
In claiming that it is not bound by the judgment entered against Ye, the defendant relies mainly on the plaintiff's failure to obtain its written consent to sue. The applicable policy provision states:
 If an insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judgment.
Allstate Automobile Policy, Court's Exhibit A-1, p. 22.
In Nationwide Mut. Ins. Co. v. Webb, supra, 436 A.2d 465, the court considered the enforceability of a "consent to sue" provision in an uninsured motorist endorsement. The policy provided that no judgment against any person alleged to be legally responsible for the insured's injuries will be conclusive, as between the insured and the insurer, on the issue of liability or the amount of damages which the insured is entitled to recover, " `unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent
of the company'." (Emphasis added.) Id., 468.
After a default judgment was entered against the uninsured motorist, the plaintiff brought a second action against the insurer and filed a motion for summary judgment, claiming that the insurer, "having had notice of and an opportunity to intervene in the tort action but having refused to intervene, was liable as a matter of law for the amount of the tort judgment against [the uninsured motorist]." Id., 470. The insurer opposed the motion on the ground that it was not bound by the default judgment because it had not given written consent to the tort action pursuant to the terms of the policy.
In holding that "conditions or limitations in an uninsured motorist endorsement, which provide less than the coverage required by the statute, are void, " the court affirmed the intermediate appellate court's decision that the "consent to sue" clause relied upon by the insurer was void. Id., 471. The court noted that the "overwhelming majority" of jurisdictions have held that "the `consent to sue' clauses are against public policy and CT Page 746 that an insurer, with notice and an opportunity to intervene, will be bound by the resolution of the issues in the tort suit."Id., 472.
As discussed earlier, Connecticut law requires that each automobile liability insurance policy "shall provide insurance. . .for the protection of persons insured thereunder, who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles. . . ." (Emphasis added.) Section 38a-336 (a)(1), General statutes. Furthermore, the plaintiff's policy provides: "We will pay damages for bodily injury, sickness, disease or death which an insured person is legally entitled to recover from the owner or operator of an uninsured auto." (Emphasis added.) Allstate Automobile Policy, Court's Exhibit A-1, p. 22.
Here, the plaintiff was granted summary judgment "as to liability only" before the matter was presented as a hearing in damages. "If an insured has obtained a valid judgment in a tort suit against the uninsured motorist, he clearly `is entitled to recover' those damages from the uninsured motorist. To allow an insurer to pay something less than those damages which the insured is entitled to recover against the uninsured motorist because of a policy clause requiring the insurer's consent to prosecute the tort suit against the uninsured, on its face cannot be squared with the statutorily mandated coverage." NationwideMut. Ins. Co. v. Webb, supra, 436 A.2d 473.
"The un[der]insured motorist provision, if it is to achieve its salutary purpose, should not compel the claimant to incur the considerable expense of presenting his claim more than once."Long v. General Accident Fire Life Assurance Corp., supra,29 Conn. Sup. 324. "If an insurer, with notice of the tort suit and an opportunity to intervene, declines to do so, and if the insurer is entitled to re-litigate the issues in a later contract action, there will be two separate court actions devoted to resolving the identical issues of tort liability and damages. A second unnecessary lawsuit represents neither a proper utilization of judicial resources nor a sound use of premium dollars. Nationwide Mut. Ins. Co. v. Webb, supra, 436 A.2d 475.
In the context of this case, the court finds the "consent to sue" clause of the policy invalid[4] as against public policy because it would conflict with the statutorily mandated coverage to permit Allstate "to pay something less than the CT Page 747 damages which the [plaintiff] is entitled to recover against [Ye] because of a policy clause requiring [Allstate's] consent to prosecute the tort suit." Nationwide Mut. Ins. Co. v. Webb,supra, 436 A.2d 475. A hearing in damages would put the plaintiff at risk in obtaining a verdict awarding damages less than that amount which he is legally entitled to recover under the Ye judgment. Such a result would require a court either to order an additur or to set aside the verdict to prevent an inequity.
Since the judgment against Ye, an underinsured motorist, determined that the plaintiff was entitled to recover damages and established the amount of damages that the plaintiff was entitled to recover, Allstate is not entitled to re-litigate that which has already been determined. The judgment against the underinsured motorist is conclusive as to the issue of damages in the present action and the plaintiff's motion for judgment is granted.[5]
The plaintiff is "legally entitled to recover" $68,867.00 damages from the underinsured motorist, Bei-Rong Ye. Ye's liability policy limits were only $20,000.00 and satisfied the judgment to that extent in addition to costs and interest in the sum of $9,000.00. The provisions of Section 38a-336, General statutes, impose Allstate's obligation to make payments to the plaintiff up to the limits of the available underinsured motorist coverage and, accordingly, the plaintiff is entitled to judgment in the sum of $68,867.00.
The defendant is entitled to credit for collateral source payments received by the plaintiff in the sum of $24,492.71 ($20,000.00 for the judgment paid pursuant to the underinsured motorist's liability policy and $4,492.71 for basic reparations benefits). Judgment in the sum of $44,374.29 is hereby entered for the plaintiff.
After filing this action with a return date of June 22, 1993, the plaintiff filed an offer of judgment on December 8, 1994 in the amount of $42,500.00. Accordingly, the plaintiff is entitled to interest on the judgment of $44,373.29 from the date of the filing of the complaint at a rate of 12% per annum pursuant to the provisions of Section 52-192a, General statutes.
After securing a judgment in the matter of Mazziotti v. Ye,
the plaintiff brought an action against Ye's carrier, made returnable to this court on October 26, 1993, entitled MazziottiCT Page 748v. Patriot General Insurance Co. That action alleged: bad faith and failure exercise due care and diligence in dealing with the plaintiff in the Ye case; failure to satisfy the judgment against Ye; a CUIPA violations under Sections 38a-816 (6)(c) and 38a-816
(6)(F); an unfair or deceptive act or practice in the business of insurance in violation of Section 38a-815 based upon a violation of Section 38a-816; and a CUTPA violation, Section 42-100a et seq.
On February 9, 1995, Patriot General Ins. Co. paid Mazziotti $20,000.00 in settlement of the claims of negligence in its handling of Mazziotti's claims against Ye as well as the allegations of unfair claim settlement practice and an unfair or deceptive act or practice in the business of insurance. The release signed by Mazziotti specified that "no payment is being made" upon the allegations of breach of good faith in attempting to negotiate a settlement in the case of Mazziotti v. Ye as well as breach of the covenant of good faith in protecting the interests of its insured, Ye and in satisfying the judgment entered against Ye.
Although no payment was made for the claims based upon those allegations, the entire action was withdrawn with prejudice upon settlement. Allstate argues that it is entitled to an additional credit of $20,000.00 because the settlement constitutes a collateral source payment under the policy. No law is presented in support of such claim. Nor does the defendant cite any support for its claim of a credit where the action against the insurer was brought for violation of public policy, the legal obligation of Patriot General to pay the judgment and the carrier's CUIPA and CUTPA violations.
Those acts of misconduct cannot be held to be an "Injury. . . caused by accident and [which arose] out of the ownership, maintenance or use of an uninsured auto." (Court Exhibit A-1). Allstate is not entitled to a credit for the settlement of claims brought against Patriot General Insurance Company. The judgment stands as entered.