WATER AND WAY PROPERTIES *v.* COLT'S MANU-
FACTURING COMPANY, INC., ET AL.
(14888)

PETERS, C. J., BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued June 2—decision released August 9, 1994

*Elena M. Gervino,* with whom were *Katherine A. Burroughs* and, on the brief, *Elliot N. Solomon,* for the appellant (defendant Coltec Industries, Inc.).

*Richard P. Kuzmak,* for the appellee (plaintiff).

PALMER, J. This case requires us to decide the extent and specificity of a lessee's obligations under a lease that had been assigned to another party with the consent of the lessor. The lessor, Water and Way Proper-

ties (plaintiff), brought this action against the lessee, Coltec Industries, Inc. (defendant), and the assignee under the lease, Colt's Manufacturing Company, Inc. (Colt),[1] to recover unpaid rent and utility charges due under a lease agreement. The trial court granted the plaintiff's motion for summary judgment against the defendant on counts two and three of the complaint, concluding that the defendant was liable for rent and utility charges under the lease. The defendant appeals[2] from the judgment of the trial court, claiming that the trial court improperly rendered summary judgment for the plaintiff on the issue of the defendant's liability for utility charges. We affirm.

The relevant facts and procedural background are as follows. In 1975, Holt Associates, Inc., leased certain premises located at 150 Huyshope Avenue in Hartford, more commonly known as the Colt Industrial Park, to Colt Industries Operating Corporation (CIOC). In 1979, the plaintiff acquired title to both the premises and the lease. The defendant is the successor in interest to CIOC under the lease. The parties amended the lease on three separate occasions, agreeing to extend its terms to June, 1996. The defendant also agreed to make certain tax, water, steam and parking payments, in addition to paying the base rent.

In March, 1990, the defendant transferred its firearms division to Colt. Included in this transfer was an

---

[1] The original complaint, dated January 14, 1992, named both Coltec Industries, Inc., and Colt as defendants. The first count of the complaint was directed at Colt. The second count was directed at Coltec Industries, Inc., and the third count was directed at both defendants. On March 18, 1992, Colt filed for bankruptcy under chapter 11 of the United States Bankruptcy Code. Consequently, all proceedings against it, including the action brought by the plaintiff, were stayed by order of the United States Bankruptcy Court. Colt, therefore, is not a party to this appeal.

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

assignment to Colt of the defendant's interest in its lease with the plaintiff. The plaintiff consented to the assignment, on the specific condition that the assignment did not relieve the defendant of its obligations under the lease.

In January, 1992, the plaintiff brought this action, alleging that the defendant was responsible for various obligations under the lease due to Colt's failure to have made certain payments thereunder. The plaintiff sought to recover unpaid rent and other charges due under the lease, including rent for the premises, tax payments, rent for the parking lot, parking lot tax payments, and payments for water and steam consumption (utility charges).

After the plaintiff and the defendant filed motions for summary judgment, the trial court granted in part the plaintiff's motion and rendered summary judgment against the defendant on the issue of liability,[3] concluding that the defendant was liable to the plaintiff for all payments that Colt had failed to make under the lease. Thereafter, the parties entered into a stipulation on the amount of damages due the plaintiff from the defendant.[4] The trial court rendered judgment for the plaintiff, on the basis of the stipulation, and this appeal followed.[5]

---

[3] The court rendered partial summary judgment for the plaintiff on count two of the complaint. The defendant had also been named, with Colt, in count three of the complaint. Count three was resolved by stipulation of the parties and is not, therefore, the subject of this appeal.

The trial court also granted summary judgment against the defendant on count one, a count in which only Colt, and not the defendant, had been named. The error appears to have been brought to the attention of the trial court, however, because the judgment contains no reference to count one. The plaintiff's claim against Colt in count one has been stayed pending a resolution of the Colt bankruptcy proceedings. See 11 U.S.C. § 362 (a) (1).

[4] The stipulation contains an express reservation by the defendant of its right to appeal the summary judgment rendered against it on the issue of liability.

[5] The summary judgment rendered in favor of the plaintiff on count two of the complaint, which is the subject of the defendant's appeal, is a final

On appeal, the defendant disputes only its liability for utility charges under the lease. The defendant acknowledges its responsibility to pay rent under the lease, but contends that the trial court improperly concluded that the utility charges constituted "rent" thereunder. The defendant further claims that summary judgment was inappropriate because the language of the lease was susceptible of at least two reasonable interpretations, thereby demonstrating the existence of an issue that required resolution by the trier of fact. We disagree.

The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." *Suarez* v. *Dickmont Plastics Corp.,* 229 Conn. 99, 106, 639 A.2d 507 (1994). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Scinto* v. *Stamm,* 224 Conn. 524, 530, 620 A.2d 99, cert. denied,     U.S.    , 114 S. Ct. 176, 126

judgment. Because of Colt's petition for bankruptcy under chapter 11, the plaintiff's claim against it on count one has been stayed and is still pending. See footnote 3. The continued pendency of count one as to Colt, however, does not affect the finality of the judgment from which the defendant has appealed because the defendant is not named in count one. See Practice Book § 4002 (c).

L. Ed. 2d 136 (1993). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Burns* v. *Hartford Hospital,* 192 Conn. 451, 455, 472 A.2d 1257 (1984).

Article eighth of the lease agreement provides that upon the assignment of the lease, the defendant "shall remain primarily responsible for the payment of the rent and the performance of all of the terms and conditions of the within Lease."[6] The trial court concluded that the utility charges constituted rent within the meaning of article eighth based on the express provisions of article sixth of the lease, which state that the utility charges "shall be due when bills therefor are rendered, and, if not promptly paid, the amount thereof shall be deemed additional rent and may be added to the next, or any subsequent, installment of rent and may be collected in the same manner as rent." The defendant does not dispute the fact that Colt has failed to pay the utility charges. Because of nonpayment by Colt, the assignee, such charges became additional rent under article sixth. The trial court properly concluded that under the plain terms of articles sixth and eighth, additional rent is rent for which the defendant remained liable.

The defendant claims that because the lease distinguishes between "rent" and "additional rent," the par-

---

[6] The complete text of article eighth of the lease is as follows: "[Coltec Industries, Inc.,] or any subtenant may sublet all or any part of the leased premises or assign the within Lease with the prior written consent of [Water and Way Properties], which consent will not be unreasonably withheld, provided, however that [Coltec Industries, Inc.,] shall remain primarily responsible for the payment of the rent and the performance of all of the terms and conditions of the within Lease."

ties must have intended to treat them as separate and unrelated obligations. From this premise, the defendant concludes that it is responsible only for "rent" and not for "additional rent." This strained construction urged by the defendant is not reasonable in view of the clear and unambiguous language used by the parties. "In determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties." *Hatcho Corp.* v. *Della Pietra,* 195 Conn. 18, 21, 485 A.2d 1285 (1985). Therefore, "[t]he controlling factor is the intent expressed in the lease, not the intent which the parties may have had or which the court believes they ought to have had." *Ingalls* v. *Roger Smith Hotels Corp.,* 143 Conn. 1, 6, 118 A.2d 463 (1955). Article sixth explicitly provides that unpaid utility charges are to be treated as rent under the lease and, as such, are to be added to the rent and collected as rent. As the trial court concluded, such charges are plainly rent as that term is used in article eighth. The use of the adjective "additional" before the noun "rent" did nothing to alter the otherwise plain meaning of article sixth.

Even if the provisions of articles sixth and eighth did not definitively resolve the issue of the defendant's responsibility for the utility payments, we would still conclude, on the basis of the terms of article eighth of the lease and the plaintiff's consent to the assignment, that the trial court properly rendered summary judgment for the plaintiff. Article eighth expressly provides that upon the assignment of the lease, the defendant "shall remain primarily responsible for . . . *all* of the terms and conditions" of the lease (emphasis added), and the consent agreement states that "neither the Assignment Agreement nor this Consent shall relieve . . . [the defendant] from full performance of its obligations under the . . . [lease]." (Emphasis added.)

Construed according to its ordinary meaning, the language of article eighth and the consent agreement clearly reflects the parties' understanding that the defendant would continue to be responsible under the lease for all of its terms and conditions, including the utility charges, after the lease had been assigned.[7]

The defendant claims nonetheless that the trial court should not have granted the plaintiff's motion for summary judgment because the defendant's interpretation of articles sixth and eighth of the lease, even if not definitive, is a reasonable interpretation that a trier of fact might find persuasive. For the reasons we have already stated, we do not agree with the defendant's contention that its construction of the lease is reasonable. Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is clear and unambiguous it becomes a question of law for the court. *Connecticut National Bank* v. *Douglas,* 221 Conn. 530, 545, 606 A.2d 684 (1992); *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.,* 203 Conn. 123, 130–31, 523 A.2d 1266 (1987); *Kakalki* v. *Bernardo,* 184 Conn. 386, 393, 439 A.2d 1016 (1981). "When the plain meaning and intent of the language is clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language. . . . [We] will not torture

---

[7] We also note that article twenty-eighth of the lease agreement provides that the lease terms "shall be construed and performed in accordance with the laws of the State of Connecticut." It is settled law in this state that the assignment of a lease presumptively does not release the lessee from responsibility to the lessor for all of its obligations under the lease. *Carrano* v. *Shoor,* 118 Conn. 86, 94, 171 A. 17 (1934). In view of this general rule, it strains credulity that the corporate parties to this commercial lease would not have expressed in clear and certain terms their intention that the defendant be released from responsibility for the utility charges, had that in fact been their intent.

words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Citation omitted; internal quotation marks omitted.) *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 373–74, 321 A.2d 444 (1973); *Schultz* v. *Hartford Fire Ins. Co.,* 213 Conn. 696, 702–703, 569 A.2d 1131 (1990). Because the language in the lease is plain and unambiguous, the defendant is liable for utility charges under the lease. The trial court, therefore, properly granted the plaintiff's motion for summary judgment.

The judgment is affirmed.

In this opinion the other justices concurred.