[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiffs, Jonathan Rodriguez, a minor child, and his mother, Jomayra Rodriguez, brought this action to recover for Jonathan's alleged injuries due to his exposure to lead-based paint while he resided in an apartment owned by the defendant Housing Authority of the City of New Haven ["Housing Authority"] The complaint alleges that on February 28, 1994, Jonathan received an initial venous lead test resulting in a blood lead level of 18 ug/dl. Notice of intention to commence an action was sent to the Housing Authority on May 12, 1995.
The Housing Authority has moved for summary judgment on the ground that the plaintiffs did not comply with the notice requirements of General Statutes § 8-67 in that notice was filed more than six months after the plaintiffs' cause of action accrued. In support of the motion, the Housing Authority has submitted its Request for Admissions, which are deemed admitted under Practice Book § 239.[1] The plaintiffs have objected to the motion for summary judgment and have provided an affidavit of Jomayra Rodriguez in opposition.
A party moving for summary judgment has the burden of demonstrating both that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law Practice Book § 384; see Union Trust Co. v. Jackson,42 Conn. App. 413, 416, 679 A.2d 421 (1996). Summary judgment may be CT Page 9688 granted on the basis of admissions by a party who did not respond to requests to admit, if that party's counteraffidavit fails to raise a material issue of fact. Orenstein v. Old BuckinghamCorp., 205 Conn. 572, 534 A.2d 1172 (1987). If, however, the party opposing the motion presents an evidentiary foundation to demonstrate the existence of a genuine issue of material fact, the motion for summary judgment must be denied. Doty v. Mucci,238 Conn. 800, 805-06, 679 A.2d 945 (1996). The court must "`view the evidence in the light most favorable to the nonmoving party.'"Water Way Properties v. Colt's Mfg. Co., 230 Conn. 660, 664,646 A.2d 143 (1994).
The admitted facts are as follows: The minor plaintiff, Jonathan Rodriguez, was diagnosed on February 28, 1994 with an elevated level of lead in his blood. As of February 28, 1994, he resided at Apartment A-1, 374 Front Street, New Haven, a multi family residential dwelling owned by the Housing Authority. The first written notice of an intention to file a claim against the Housing Authority in regard to the claim that the plaintiff Jonathan Rodriguez was exposed to lead while in the apartment is a letter sent from the attorney for the plaintiff dated May 12, 1995. The notice letter was sent more than six months after the date that Jonathan Rodriguez was diagnosed as having an elevated level of lead in his blood. The plaintiff claims that the elevated level of lead in the blood of Jonathan Rodriguez is due to exposure to lead from Apartment A-1, 374 Front Street, New Haven, Connecticut.
In her opposing affidavit, plaintiff Jomayra Rodriguez states that on February 28, 1994, when she learned that her son had an elevated blood lead level, she did not know where the lead came from but "was concerned as to whether the source of the problem was on or within the premises where we lived," the apartment at Front Street. She further states that she "promptly and repeatedly contacted the City Housing Authority and requested them to send someone over to our home, but they did not come. Finally, the Dept. of Health sent someone here in March 1995." Affidavit dated February 3, 1997, ¶¶ 4, 5.
General Statutes § 8-67 provides, in pertinent part, that "[a]ny person injured . . . within boundaries of property owned or controlled by an authority, for which injury such authority is or may be liable, may bring an action within two years after the cause of action therefor arose to recover damages from such authority, provided written notice of the intention to commence CT Page 9689 such action and of the time when and the place where the damages were incurred or sustained has been filed . . . within six months after the cause of action therefor arose." The time limitations of § 8-67 act to limit a plaintiff's ability to recover, as do typical statutes of limitations. White v. Edmonds,38 Conn. App. 175, 184, 659 A.2d 748 (1995). "Section 8-67
did not create liability where none existed; rather, it provides for procedural limitations on the ability to recover on a cause of action already available. As such it is a condition subsequent to recovery that may be specially pleaded by a defendant to bar recovery." Id., 185.[2] In this case, the defendant has pleaded lack of timely compliance with § 8-67 as its second special defense.
The issue presented by the defendant's motion for summary judgment is when the plaintiffs cause of action arose within the meaning of § 8-67. In the context of a motion for summary judgment, the court's role is not to decide whether the plaintiffs complied with the statute but whether an issue of material fact regarding compliance with the statute exists. "A material fact is one that makes a difference in the outcome of a case." UnionTrust Co. v. Jackson, supra, 42 Conn. App. at 418. Since untimely compliance with § 8-67 is sufficient to defeat the plaintiffs case, it is a material fact. See Catz v. Rubenstein,201 Conn. 39, 48, 513 A.2d 98 (1986).
The defendant maintains that the court may look to cases defining the term "cause of action" as it is contained in other statutes to determine its meaning as used in § 8-67. The plaintiffs do not disagree that in other contexts a cause of action has been defined to accrue "when a plaintiff suffers actionable harm. . . . Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." (Citations omitted.) Champagne v.Raybestos-Manhattan, Inc., 212 Conn. 509, 521, 562 A.2d 1100
(1989), citing Catz v. Rubenstein, supra, 201 Conn. at 43.[3]
Similarly, in a negligence action, "[a] breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action . . . . Prosser Keeton, Torts, (5th Ed.) 30, pp. 164-65; Calderwood v. Bender, 189 Conn. 580,584, 457 A.2d 313 (1983); Coburn v. Lenox Homes, Inc.,186 Conn. 370, 375, 441 A.2d 620 (1982); Busko v. DeFilippo,
CT Page 9690162 Conn. 462, 466, 294 A.2d 510 (1972); Moore v. Bunk,154 Conn. 644, 649, 228 A.2d 510 (1967). They are therefore necessary ingredients for `actionable harm.'" Id., 201 Conn. at 44. The focus on when a cause of action accrues must be on the plaintiffs' knowledge of facts rather than applicable legal theories. Id., 201 Conn. at 47.
The defendant contends that the cause of action arose when Jonathan Rodriguez was diagnosed with an elevated blood lead level on February 28, 1994. The plaintiffs contend that the cause of action did not arise before March 28, 1995, when the apartment was inspected for lead paint and may not have arisen until April 24, 1995, the date when written notice that the inspection revealed excessive levels of lead in the apartment was sent. Neither contention is dispositive, as a matter of law, of the timeliness of the notice in this case.
An elevated blood lead level, alone, does not necessarily mean that the Housing Authority's conduct was the source of the minor plaintiff's lead exposure.[4] Lead, which remains toxic indefinitely, is prevalent in the environment. Legacy of Lead:America's Continuing Epidemic of Childhood Lead Poisoning, pp. 15-16 (Environmental Defense Fund, March 1990). While lead-based paint is a significant source of exposure for children, other sources — including roadside and soil residue from leaded gasoline, other contaminated soil, drinking water, food, and commercial products — "make a notable contribution" to childhood lead exposure. Id. at pp. 17-22. See The Nature and Extent ofLead Poisoning in Children in the United States: A Report toCongress (Agency for Toxic Substances and Disease Registry, Public Health Service, U.S. Department of Health and Human Services, July 1988). In a Connecticut study of the paint, dust, soil and water at the homes of 19 children who were found to have blood lead levels greater than 25 ug/dl between October 1988 and July 1989, "16 of the 19 homes had elevated lead levels in two or more of these sources" and paint, although containing elevated lead levels, was not the sole source of elevated lead in any of the homes. Moreover, in one case the probable lead source was the child's sandbox and in another the probable source was the child's school. Pilarski, et al., "Sources of Lead in the Environments of Children with Elevated Blood Lead in Connecticut." This study also pointed out that the "emphasis on paint . . . may [be] inappropriate for children with moderately elevated lead levels, for whom studies have shown significant contribution from lead in dust, soil and water."[5]
CT Page 9691
Thus the question is what facts were available to the plaintiffs, and in particular Jomayra Rodriguez, see Burns v.Hartford Hospital, 192 Conn. 451, 458, n. 4, 472 A.2d 768 (1984) (knowledge of parent must be imputed to minor child), as of February 28, 1994, when they learned of Jonathan's elevated blood lead level, to show that defective lead-based paint conditions, resulting in excessive levels of lead, in the apartment or on the premises were the probable source of Jonathan's exposure, and whether due diligence was exercised to discover the source of the lead exposure and whether it was caused by an act or omission of the Housing Authority. Jomayra Rodriguez's affidavit raises a dispute about whether she exercised reasonable care to confirm her suspicions that the source of her son's elevated blood lead was the apartment she resided in. The plaintiff admits that she was concerned about whether her apartment was the source of the lead. She then states that she promptly and repeatedly contacted the Housing Authority to send someone over to her home, implying an effort on her part to pursue her concerns.[6] An inspection revealing levels of lead in excess of that permitted by law, however, did not take place until March 1995 when it was conducted by the Department of Health.[7]
The date when the plaintiffs discovered or should have reasonably discovered that there were defective lead-based paint conditions, resulting in exposure to excessive levels of lead, in the apartment or on the premises is a genuine issue of material fact in this case. Since the Housing Authority has failed to sustain its burden of demonstrating the absence of a genuine issue of material fact, its motion for summary judgment is denied.
LAGER, J.