[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#144)
The plaintiff, Security Pacific National Bank ("Security Pacific"), commenced this foreclosure action by abode service of a writ of summons and complaint on the defendants, Charles F. Robertson and Elaine D. Robertson, on May 14, 1992, as evidenced by the return of service contained in the court file. Since the time of filing, the pleadings have been through various stages of revision and amendment, and Security Pacific has successfully moved to substitute Bank of America National Trust and Savings Association ("Bank of America") as party plaintiff.
On July 6, 1994, the plaintiff filed an amended complaint alleging, in a single count, that the defendants failed to make installments of principal and interest due on the note and mortgage at issue since September 1, 1991. The defendants filed an answer, special defense[1], and single count counterclaim on January 3, 1995. The plaintiff filed the present motion for summary judgment on the issue of liability only. The plaintiff, in essence, argues that summary judgment on the complaint should be granted because the special defenses raised by the defendants are not legally sufficient or are not valid defenses to a mortgage foreclosure action. Further, the plaintiff argues that the counterclaim, which alleges violations of the Connecticut Unfair Practices Act ("CUTPA"), fails to allege sufficient facts and is inadequate as a matter of law. The motion for summary judgment was accompanied by the requisite memorandum of law, an affidavit, copies of the mortgage documents, a copy of an assignment of mortgage from Goldome Realty Credit Corporation to Security Pacific National Bank recorded at volume 599 page 73 of the Darien land records, a copy of a Certificate of Merger between Security Pacific National Bank and Bank of America recorded at volume 752 pages 54-56, the affidavit of Kathleen A. Piech, Assistant Corporate Secretary of KeyCorp Mortgage Inc. documenting the various name changes and mergers of KeyCorp and a copy of the residential loan application completed by the defendants. Although the plaintiff has moved for summary judgment on the complaint, the plaintiff is actually contesting the legal CT Page 9640 sufficiency of the special defense and counterclaim. Thus, the court will address the arguments raised by the plaintiff.
The defendants, in opposition to the motion for summary judgment, argue that there are genuine issues of material fact with regard to the ownership of the loan, the outstanding balance of the loan[2] and the assignment and transfer of the loan servicing from the original lender to KeyCorp Mortgage Incorporated. In support of their opposition to the motion for summary judgment, the defendants filed a memorandum of law, an affidavit signed by Mr. Robertson and a copy of a letter from KeyCorp to Goldome customers.
The defendants special defenses set forth the following:
 1. The non-payment of any installment of principal and interest described in the Plaintiff's Amended Complaint and the resulting default was due to the fact that the Defendants known or possible income was never sufficient to pay the initial payments or any increased payments as set forth in a Note, which facts the plaintiff's agents servants or employees at the time of granting the Note knew or should have known;
 2. The entity designated by the Plaintiff to service the collection of payments failed to give the required notice under Section 6 of the Real Estate Settlement Procedure Act (Respa) (12 U.S.C. § 2605) of the transferring of the servicing of said account, and the defendants were damaged by said lack of notice;
 3. Throughout the period of time that KeyCorp Mortgage Inc. has been the alleged servicer of said loan, it as the agent of the Plaintiff, has violated the long standing principals of good faith and fair dealing in that they never timely accepted the payments during the foreclosure moratorium period or prior thereto, and failed to disclose to the Defendants a person with authority to contact in order to work out a short payoff, or to compromise the debt under the circumstances of its stated balance on the books of the Holder, or to reinstate said mortgage;
 4. The Plaintiff, Bank of America, acquired the rights to said Note through a merger with Security CT Page 9641 Pacific National Bank, and the balance for said Note as reflected on the books of the Plaintiff is substantially less than the face amount of the Note, and therefore the Plaintiff would receive unjust enrichment unless said debt is adjusted accordingly.
In their counterclaim, the defendants reallege paragraphs one through four of the above special defenses and further allege that "[t]he Plaintiff, through its agents, servants or employees has violated the doctrine of good faith and fair dealing, has used deceptive and misleading representation in its attempt to collect this debt, and is in the practice of doing same, thereby violating the Connecticut Unfair Trade Practices Act." (Defendants' Counterclaim ¶ 5.) By way of relief the defendants seek denial of the foreclosure of plaintiff's mortgage, restructuring of the mortgage, attorney's fees, damages, punitive damages and such other relief as the court deems equitable.
In their answer to the complaint the defendants admit that they have failed to pay all monthly installments of principal and interest since September 1, 1991 but they have attempted to make some part of the payments, which attempts have been rejected.
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doty v.Mucci, 238 Conn. 800, 805, 679 A.2d 945 (1996). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party."Bank of Boston v. Scott Real Estate, 40 Conn. App. 616, 620,673 A.2d 558, cert. denied, 237 Conn. 912, 675 A.2d 884 (1996). Summary judgment is "appropriate only if a fair and reasonable person could conclude only one way." Miller v. UnitedTechnologies Corp., 233 Conn. 732, 751, 660 A.2d 810 (1995).
Connecticut courts have permitted the use of a motion for summary judgment to contest the legal sufficiency of the pleadings, even though legal sufficiency is more appropriately tested by a motion to strike. See, e.g., Boucher Agency, Inc. v.Zimmer, 160 Conn. 404, 409, 279 A.2d 540 (1971) (a motion for summary judgment may be used to test the legal sufficiency of the pleadings); Burke v. Avitabile, 32 Conn. App. 765, 769, CT Page 9642630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297 (1993) (where court found that, while a motion to strike is the proper method to challenge the legal sufficiency of a complaint, it is not the burden of the defendant to attempt to correct a deficient complaint by motion). Thus, as in the present case, "failure by the [plaintiff] to [move to strike] any portion of the [special defense and counterclaim] does not prevent [it] from claiming that the [defendants] [have] no cause of action and that a judgment in [its] favor [is] warranted. Brill v. Ulrey,159 Conn. 371, 374, 269 A.2d 312 (1970)." Id., citing Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 535 n. 5,546 A.2d 216 (1988).
"In a foreclosure action, defenses are generally limited to payment, discharge, release, satisfaction or invalidity of a lien." First Federal v. Kakaletris, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 130826 (February 23, 1994, Karazin, J.) (11 Conn. L. Rptr. 113). "A foreclosure is an equitable proceeding where the trial court may consider all relevant circumstances to ensure complete justice has been done." Id., citing Reynolds v. Ramos, 188 Conn. 316,320, 449 A.2d 182 (1982). "Equity has permitted allegations of mistake, accident, fraud, equitable estoppel, CUTPA, and breach of an implied covenant of good faith and fair dealing to become valid defenses." Bank of Boston Connecticut v. Calabrese,
Superior Court, judicial district of Waterbury, Docket No. 118377 (July 11, 1994, Sylvester, J.). However, the court in FirstFederal v. Kakaletris, supra, adopted the rationale that "only those equitable defenses which attack the making, validity or enforcement of a note or mortgage should be recognized in a foreclosure action."
The defendant's first special defense alleges that the plaintiff knew or should have known the that the defendants did not have sufficient income to pay the note. According to the affidavit of Mr. Robertson, he lost his job with his employer in February of 1989 (Affidavit ¶ 20.) A copy of the loan application was filed by the plaintiff in support of the motion for summary judgment. According to the residential loan application which was signed by both defendants on November 2, 1988, the joint gross monthly income of the defendants was $10,500. The open ended mortgage is dated the same day as the loan application, that is November 2, 1988. The Robertsons, at the time they signed the mortgage note had ample income to cover the debt. "[T]he determination of whether a duty exists . . . is a question of CT Page 9643 law." Jaworski v. Kiernan, 241 Conn. 399, 404, ___ A.2d ___ (1997). Research has not revealed any law supporting the proposition that a lender has a duty to investigate the financial stability of a borrower. The only case research revealed raising a similar defense is Connecticut National Bank v. Anderson,
Superior Court, judicial district of Litchfield (October 1, 1991, Pickett, J.) (6 C.S.C.R. 943), wherein the court granted a motion to strike a special defense alleging breach of a lender's "duty of inquiry into the ability of the defendants to repay the loan." In that case, however, the court granted the motion to strike because the defendants conceded that there was no such duty imposed by Connecticut law and failed to provide any authority to support the proposition. Likewise, in the present case, the defendants have failed to provide this court with, and independent research has not revealed, any authority to support the proposition that a lender has a duty to a borrower to inquire into the ability of the borrower to repay a loan. Thus, the court finds that the plaintiffs did not owe a duty to the defendants and thus, the special defense fails as a matter of law.
The second special defense alleges that the plaintiff violated Section 6 of the Real Estate Settlement Procedures Act ("RESPA"), specifically, 12 U.S.C. § 2605 which provides in relevant part: "Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of the application for the loan, whether servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding."12 U.S.C. § 2605 (a). The defendants argue that they were not notified of the transfer of the loan servicing and were injured thereby because they were unable to negotiate alternative means to pay their mortgage obligation. They also argue that they were not told that the mortgage could be assigned at the time they signed the mortgage agreement and this omission violates RESPA. A violation of RESPA, however, by the terms of the act, does not invalidate the mortgage agreement and thus, does not provide a defense to a foreclosure action. See 12 U.S.C. § 2615 which provides: "Nothing in this Act shall affect the validity or enforceability of any sale or contract for the sale of real property or any loan, loan agreement, mortgage or lien made or arising in connection with a federally related mortgage loan." Thus, although violations of RESPA are actionable, they are not a defense to a foreclosure action as a matter of law.
The third special defense alleges that the plaintiff breached CT Page 9644 its duty of good faith and fair dealing in "that [the plaintiff] never timely accepted the payments during the foreclosure moratorium period or prior thereto, and failed to disclose to the Defendants a person with authority to contact in order to work out a short payoff, or to compromise the debt under the circumstances of its stated balance on the books of the Holder, or to reinstate said mortgage." The note executed by both defendants, provides in pertinent part as follows:
(B) Default
 If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
 (C) Notice of Default
 If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.
 (D) No Waiver By Note Holder
 Even if, at the time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
Under the terms of the note as stated above, the plaintiff, upon the defendants' default, had the right to demand immediate payment in the full amount of principal and all interest due on the note. The plaintiff was under no duty to accept payments in less than the full amount of the loan, work out a short payoff, compromise the debt or reinstate the mortgage.[3] The only duty the plaintiff had to the defendants, if immediate payment was demanded, was to give the defendants notice of acceleration. The defendants have not raised any question of fact with regard to notice and the affidavit of the vice president of the plaintiff bank indicates that notice was duly provided. (Affidavit of Catherine M. Gorlewski ¶ 5.) Additionally, under the waiver provision of the note, the plaintiff bank preserved the right to CT Page 9645 demand payment "[e]ven if, at the time . . . [of] default, the Note Holder does not require . . . pay[ment] immediately in full as described above, the Note Holder will still have the right to do so if [borrower is] in default at a later time."
The fourth special defense alleges unjust enrichment. The defendants specifically allege that "the balance for said Note as reflected on the books of the Plaintiff is substantially less[4] than the face amount of the Note, and therefore the Plaintiff would receive unjust enrichment unless said debt is adjusted accordingly." The claim of unjust enrichment is a dispute in the amount of money due and owing on the note and does not go to the issue of liability on the note. Thus, this defense fails as a matter of law.
In their counterclaim, the defendants reallege as paragraphs one through four, respectively, the four special defenses outlined above. They further allege that "[t]he Plaintiff, through its agents, servants or employees has violated the doctrine of good faith and fair dealing, has used deceptive and misleading representation in its attempt to collect this debt, and is in the practice of doing same, thereby violating the Connecticut Unfair Trade Practices Act." (Defendants' Counterclaim ¶ 5.)
"[A]ny party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action." Practice Book § 379. "Because a counterclaim is a separate and distinct action . . . a party seeking summary judgment on both a complaint and a counterclaim must file an appropriate motion addressed to each." (Citation omitted.) Millerv. Bourgoin, 28 Conn. App. 491, 500, 613 A.2d 292, cert. denied,233 Conn. 927, 614 A.2d 800 (1992). In the present case, the plaintiff's motion for summary judgment seeks judgment on the complaint but the memorandum clearly seeks judgment on the counterclaim as well. Thus, the court will address the merits.
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established CT Page 9646 concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Citations omitted; internal quotation marks omitted.) Fink v. Golenbock, 238 Conn. 183, 215, 680 A.2d 1243
(1996).
In paragraph 2 of the counterclaim, the defendants allege that "[t]he entity designated by the Plaintiff to service the collection of payments failed to give the required notice under Section 6 of the Real Estate Settlement Procedure Act (Respa) (12 U.S.C. § 2605) of the transferring of the servicing of said account, and the defendants were damaged by said lack of notice."
Section 6 of the Real Estate Settlement Procedures Act ("RESPA"), specifically, 12 U.S.C. § 2605 provides in relevant part: "Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of the application for the loan, whether servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding."12 U.S.C. § 2605 (a). The defendants allege that they were never advised that the servicing of the mortgage could be assigned nor were they advised that this was indeed done. In response, the plaintiff argues that the servicing rights of the loan were never assigned or transferred. Instead, the plaintiff argues, that the ownership but not the servicing of the loan has gone through an assignment from Goldome Realty Credit Corp. to Security Pacific National Bank. The assignment of the note is recorded at Volume 599 page 73 of the Darien land records. According to the affidavit of the president of KeyCorp Mortgage Inc., KeyCorp Mortgage Inc., is the servicer for the plaintiff bank which owns the note and mortgage. (Affidavit of Catherine M. Gorlewski ¶ 2.) Goldome Realty assigned the mortgage and note to Security Pacific National Bank and Security Pacific National Bank ultimately merged with National Bank. (Affidavit of Catherine M. Gorlewski ¶ 2.) "KeyCorp Mortgage Company, fka Goldome Realty Credit Corp., has at all times been the servicer of the subject note and mortgage. The servicer has at times been formerly known as Goldome Realty Credit Corp. A true copy of the Articles of Amendment changing the name of the servicer is attached [to the motion for summary judgment] as exhibit E." (Affidavit of CT Page 9647 Catherine M. Gorlewski ¶ 2.) The "Articles of Amendment" are in the form of an affidavit signed by Kathleen A. Piech, Assistant Corporate Secretary of KeyCorp Mortgage Inc., dated April 7, 1992.[5] That affidavit provides:
The undersigned, being duly sworn, deposes and says that:
 1. I am the Assistant Corporate Secretary of KeyCorp Mortgage Inc., a Maryland corporation (the "Corporation") having its principal off ice and place of business at 205 Park Club Lane, Buffalo, New York 14231.
 2. Over a period of years the Corporation has undergone various name changes and mergers.
 3. In order to establish a history of such name changes, I have examined the records of the Corporation and state as follows:
 a. W.S. Steed Mortgage Company was incorporated in the State of Maryland on June 23, 1967.
 b. The name of W.S. Steed Mortgage Company was changed to Steed Mortgage Company on July 1, 1976.
 c. The Corporation amended its Articles of Incorporation and the name of Steed Mortgage Company was changed to Goldome Realty Credit Corp. on December 23, 1982.
 d. The Corporation amended its Articles of Incorporation and the name Goldome Realty Credit Corp. was changed to KeyCorp Mortgage Inc. on July 3, 1991.
 4. The Corporation was the successor by merger to Key Mortgage Funding, Inc. effective March 27, 1992.
 5. This affidavit is being given with the knowledge that it may be relied upon by various title insurance companies, abstract and search companies, and various public officials in charge of land records.
 6. This affidavit is further being given to induce any county or parish clerks, Land Office Recorders, or county CT Page 9648 or parish Registrars to accept and allow the recording or filing of any instrument (including but not limited to mortgage satisfactions, mortgage assignments, mortgage consolidations or modifications, deeds, Lis Pendens and judgment satisfactions) which may be executed on behalf of KeyCorp Mortgage Inc. but which relates to previously recorded or filed instrument or proceeding naming the Corporation by its prior name.
There is nothing in the above affidavit that indicates that Goldome Realty "assigned" the servicing of the loan at issue in the present case. The only document filed in opposition to the motion for summary judgment is the affidavit of Charles F. Robertson wherein he states: "Shapiro Greenspan would imply to the Court that only name changes had occurred with the servicer.This is not true." (Affidavit of Charles F. Robertson ¶ 7.) A party's conclusory statements, "in the affidavit and elsewhere," may not "constitute evidence sufficient to establish the existence of disputed material facts." Gupta v. New BritainGeneral Hospital, 239 Conn. 574, 583, 687 A.2d 111 (1996).
Attached to the affidavit was a copy of a letter dated July 12, 1992, sent by KeyCorp Mortgage Inc. to mortgage customers regarding the changes taking place at Goldome and KeyCorp's acquisition of Goldome.[6] The affidavit of Mr. Robertson provides that this letter is proof that the servicer has changed. (Affidavit ¶ 38.) Certainly, the letter indicates that KeyCorp purchased 31 Goldome Branches and that KeyCorp is now one of the largest servicers of loans. The letter also goes on to state, however, that the main purpose of the letter is to inform customers of the change of name. The court notes that the address on KeyCorp's letterhead is the same address as that of Goldome's on the open-end mortgage. The defendants have failed to provide any evidence to refute the affidavits and certificates of merger submitted by the plaintiff in support of the motion for summary judgment. The court finds that Goldome changed its name but the servicing of the mortgage was not "assigned, sold or transferred".
Even if the merger of Goldome with KeyCorp is considered to be an "assignment, selling or transferring" of the servicing of the loan, the counterclaim fails on jurisdictional grounds. RESPA provides that "[a]ny action pursuant to the provisions of section 6, 8, or 9 [12 USCS § 2505, 2607, 2608] may be brought within 3 years in the case of violation of section 6 [12 USCS § CT Page 9649 2605] . . . from the date of the occurrence of the violation."12 U.S.C. § 2614. The violations, if any, would have taken place in 1988 when the parties signed the mortgage documents, if the defendants were never given written notice of the rights of the servicer to assign the servicing of the loan. Further, the change of name from Goldome Realty to KeyCorp Mortgage took place on July 3, 1991. The defendants did not file a counterclaim alleging CUTPA violations based on RESPA until January 3, 1995 well beyond the statutory period for alleging a RESPA violation.
In order to survive a motion for summary judgment, the Robertsons must provide evidence to show that a genuine issue of material facts exists. Water Way Properties v. Colt's Mfg. Co.,230 Conn. 660, 665, 646 A.2d 143 (1994). The evidence submitted fails to show that a genuine issue of material fact exists. There are no genuine issues of material fact with respect to the defendants' counterclaim alleging CUTPA violations. The plaintiff's motion for summary judgment on the complaint as to liability only, is granted.
HICKEY, J.